1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

IAN BLACK,

10                          Plaintiff,

11          v.

12   COLASKA INC.,

13                          Defendant.

14

CASE NO. C07-823JLR

ORDER

15          This matter comes before the court on Defendant Colaska, Inc. d/b/a SECON's
16
("Secon") motion for summary judgment (Dkt. # 35), Mr. Black's motion to strike (Dkt. #
17
18   40) and Secon's motion to strike (Dkt. # 41).  The court has considered the papers filed in

19   support of and in opposition to the motions, heard the argument of counsel and for the

20   reasons that follow GRANTS the motion for summary judgment, DENIES as moot Mr.

21   Black's motion to strike and DENIES in part and GRANTS in part Secon's motion to

22   strike.

23                                    **I.  BACKGROUND**

24
25          Secon is a construction company with offices located in Juneau, Alaska.  Plaintiff

26   Ian Black was initially hired by Secon as a Project Engineer in 1997.  (Declaration of

27   Patricia A. Eakes ("Eakes Decl.") (Dkt. # 36), Ex. B.)  In 2001, Mr. Black was promoted

28   to the position of Project Manager where he remained until he resigned in May 2006.

ORDER–1

(*Id.*)  Between 2004 and 2006, Mr. Black was responsible for several large projects in Juneau including the Petersburg NHS, Douglas Bridge, Juneau Delta Taxiway, Juneau Areawide Paving and Fred Meyer Expansion.  (Deposition of Ian Black ("Black Dep.") (Dkt. # 36) 52:22-54:18.)  These projects ranged in cost from the high-six figures to several million dollars and involved Mr. Black directing seven to fifteen crew members.  (*See* Black Dep. 58:1-10, 59:14-25, 62:1-10, 67:6-16, 67:17-68:4, 70:5-10, 72:10-15 73:25-74:8.)

At his deposition, Mr. Black answered "yes" to the following questions:  (1) "As a project manager, were you responsible for the success of each project to which you were assigned?"; (2) "If you were performing work, physical labor, on a project did you continue to be responsible for the success or the failure of the project?"; (3) "Was it your responsibility as the project manager to ensure that the work being performed on your project was done safely?"; and (4) "Was it your responsibility as the project manager to ensure that the job that you were assigned to was being completed within the established budget?"  (Black Dep. 106:9-107:12.)  Mr. Black confirmed that all the projects that he was assigned were profitable.  (Black Dep. 106:12-15.)  In order to ensure that projects were profitable, Mr. Black tracked the quantity of work completed in a day against the budget and "[b]y directing and working with the employees to make sure that work got done in as fast a manner as possible."  (Black Dep. 107:13-108:3.)

As a project manager, Mr. Black did "whatever it took to get the jobs done; all aspects, anything and everything that needed to get the job done."  (Black Dep. 121:6-7.)  Mr. Black reported that as part of getting the job done he would for example do "[s]ome accounting, some reporting tasks, working in the field; traffic, setting up -- removing cones at the end of the day, setting up signs; operating equipment, whatever it took."  (Black Dep. 122:3-8.)  He stated that he would "break the projects into small portions of

ORDER–2

work and utilize [his] skills and the skills of the other crew to accomplish those tasks as efficiently as possible with the tools at hand." (Black Dep. 100:8-17.) The other tasks that Mr. Black performed included having written and verbal communications with owners about specific projects; signing subcontracts on behalf of Secon; signing change orders; supervising and directing the work of employees at the job-site; determining the number of employees needed at a job-site and requesting employees as needed from individuals at Secon; determining the hours worked by the crew; scheduling the work; creating the project schedules (with the exception of paving) and sequencing the work; along with another employee preparing monthly cost analyses; signing pay estimates; drafting and ensuring compliance with owner required plans; along with another employee completing margin analyses on specific projects; inputting crew members' time cards; purchasing and scheduling materials; and ensuring that projects met specifications. (Black Dep. 109:13-111:5, 122:9-17, 122:23-123:21, 127:19-23, 137:18-139:10, 139:25-140:5, 140:22-141:3, 142:8-143:7, 161:14-162:3, 163:20-165:14, 168:4-19, 180:7-22, 224:22-225:2, 295:2-297:11, 306:23-307:5, 309:2-8, 315:20-316:5, 325:15-23, 311:22-313:25, 318:4-324:1, 335:16-21.)

Mr. Black also created, during the pendency of this litigation, a résumé, which states that he did the following while at Secon: (1) "profitably managed the construction of nearly 100 million dollars in civil contracts . . . ."; (2) "[m]anaged long range logistics and planning;" (3) "[r]outinely anticipated needs and requirements not initially specified in original estimates . . . ."; (4) "[p]lanned, priced and scheduled outside sales through a wide variety of materials sources and suppliers"; (5) "administer[ed] all aspects of the assigned projects . . . duties include[d] . . . costs analysis and accounting, purchasing and scheduling materials in and out of projects, accounts receivables, scheduling subcontractors, contract manpower, as well as owner and rental equipment for each

ORDER–3

project"; and (6) "projects [] managed ranged in complexity from simple grind and pave projects to extensive bridge retrofits, airport paving, major rock and earthwork projects, and detailed reclamation projects."  (Eakes Decl., Ex. H.)

    At oral argument, Mr. Black contended that he was merely a puppet for higher managers at Secon.  He claimed that in performing his job he followed the bid documents which project managers allegedly termed a "cookbook" to ensure that he completed the job successfully.  He contends that he exercised no discretion in performing his job duties.  At his deposition, Mr. Black stated that although he had the authority to sign subcontracts on behalf of Secon he was not allowed to negotiate any terms or conditions of those contracts; although he was authorized to sign change orders he could only sign those orders "assuming that the company agreed with the change order"; he needed to involve his boss, Mr. Bingham, if he wanted to alter the number of employees working on a project; he did not have the authority to determine which "key personnel" would be assigned to his jobs; he never hired or fired any employees; his decisions regarding how tasks were going to be accomplished were made within the framework of the estimate and budget provided to him by Secon; he consulted with his boss, Mr. Bingham, if he believed a worker needed disciplinary action; he believed he needed to consult Kirkland regarding any owner issues that would involve costs greater than $5,000; and although he was allowed to sign pay applications as the job got closer to final payment the applications had to be reviewed by the Kirkland office.  (Black Dep. 108:10-15, 112:18-113:18, 122:23-123:21, 126:20-24, 133:16-18, 156:2-16, 180:10-15, 295:5-296:15, 327:22-328:6.)

    While employed as a project manager at Secon Mr. Black performed physical labor.  He was observed on multiple occasions operating heavy equipment (Deposition of George Campbell ("Campbell Dep.") (Dkt. # 40-2) 15:4-16:17, 34:13-23; Deposition of

ORDER–4

Teri Maxwell ("Maxwell Dep.") (Dkt. # 40-3) 20:15-19; Deposition of Tina Bergam ("Bergam Dep.") (Dkt. # 40-2) 24:6-10; Deposition of John Logsdon ("Logsdon Dep.") (Dkt. # 40-3) 33:13-23, 35:9-20, 45:18-22, 54:21-55:4; Deposition of Billy Williams ("Williams Dep.") (Dkt. #40-2) 21:25-22:7); helping to spread asphalt on prepared road beds using a shovel or rake to spread the fresh material (Bergam Dep. 18:5-17; Williams Dep. 21:19-21; Campbell Dep. 16:7-17); laying string line for pavers (Maxwell Dep. 13:22-24; Bergam Dep. 16:23-25; Logsdon Dep. 21:4-7); placing pipe in the ground (Logsdon Dep. 43:17-23); installing erosion control devices (Logsdon Dep. 22:19-21); erecting, moving and disassembling traffic control devices (Bergam Dep. 22:23-23:2); and relieving flaggers and filling in wherever needed (Bergam Dep. 14:15-17, 23:3-13).

Prior to bringing this action, Mr. Black brought a wage claim with the State of Alaska, Department of Labor and Workforce Development. (*See* Eakes Decl., Ex. A.) It is not clear when Mr. Black filed this claim; however, Secon received notice of the claim by letter on July 5, 2006. Mr. Black now brings this action to recover overtime pay that he alleges is due to him and was wrongfully denied by Secon in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and Alaska state law (Alaska Stat. § 23.10.050 *et seq.*).

## II. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show

ORDER–5

a genuine issue for trial.  *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

## A.   Statute of Limitations

### 1.   FLSA

Secon first argues that Mr. Black's FLSA claims for overtime wages that occurred prior to May 31, 2005 are barred by the statute of limitations.  (Mot. (Dkt. # 35) at 7.)  Mr. Black offered no opposition in his papers or at oral argument.

The applicable statute of limitations found in 29 U.S.C. § 255(a) provides that "every . . . action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  A cause of action under the FLSA for unpaid overtime compensation accrues "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b).  Thus "[a] new cause of action accrues at each payday immediately following the work period for which compensation is owed."  *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007).

Mr. Black filed his lawsuit on May 30, 2007.  Although his complaint alleges that Secon's failure to pay "overtime compensation to which he was owed was knowing, willful and intentional," Mr. Black has not come forward to produce evidence that Secon's failure to pay was knowing, willful and intentional.  (*See* Compl. (Dkt. # 1) ¶ 2.)  In the face of the lack of opposition by Mr. Black, the court finds that there is no genuine issue of material fact that Mr. Black's claims prior to May 30, 2005 are barred.  The court therefore dismisses any claims asserted by Mr. Black under the FLSA prior to May 30, 2005.

ORDER–6

### 2. Alaska Wage and Hour Act ("AWHA")

Alaska Stat. § 23.10.130 provides: "An action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under AS 23.10.050 - 23.10.150 is forever barred unless it is started within two years after the cause of action accrues. For the purposes of this section an action is considered to be started on the date when the complaint is filed." Alaska courts have held, however, that in some circumstances the statute of limitations may be equitably tolled. *See Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087-88 (Alaska 1989). In *Dayhoff*, the court held that "filing a statutory wage claim with the [the Department of Labor] equitably tolls the statute of limitations if the other requirements are established." 772 P.2d at 1088. Secon does not dispute that the "other requirements" to establish equitable tolling are met. (*See* Mot. at 8.) It contends that it received notice of the overtime claim from the Department of Labor on July 6, 2006 and therefore all of Mr. Black's claims for overtime wages prior to July 7, 2004 are barred. (*See id.*) Mr. Black offers no opposition.

The court finds that Mr. Black's AWHA claims that arose two years prior to the date on which he filed his claim with the Alaska Department of Labor, as opposed to the date on which Secon received notice of the claim, are barred. The court therefore dismisses any claims asserted by Mr. Black under the AWHA that arose more than two years prior to the date on which he filed his claim with the Alaska Department of Labor.

### B. Was Mr. Black an Exempt Employee?

The FLSA requires that if any employee, except those subject to certain exemptions, works longer than a forty-hour work-week that the employee receive compensation for his employment in excess of forty hours at a rate not less than one and one-half times his regular rate of compensation. 29 U.S.C. § 207(a)(1). The exemptions include administrative, executive and highly compensated employees. *See* 29 U.S.C. §

213. The AWHA is similar in that it requires overtime pay for non-exempt employees working in excess of a forty-hour work-week. *See* Alaska Stat. § 23.10.060(a)-(b). The provisions of § 23.10.060 do not apply to an individual employed "in a bona fide executive, administrative, or professional capacity." Alaska Stat. § 23.10.055(a)(9)(A). Bona fide executive, administrative, or professional capacity "has the meaning and shall be interpreted in accordance with 29 U.S.C. 201--219 (Fair Labor Standards Act of 1938), as amended, or the regulations adopted under those sections." Alaska Stat. § 23.10.055(c)(1).

The burden is on the employer to show that an exemption applies. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Fred Meyer of Alaska Inc. v. Bailey*, 100 P.3d 881, 884 (Alaska 2004).[1] Under both the FLSA and AWHA the exemptions are to be "narrowly construed" against the employers seeking to assert them and their application limited to those circumstances "plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Whitesides v. U-Haul Co. of Alaska*, 16 P.3d 729, 732 (Alaska 2001). "Whether employees are exempt from the requirements of the FLSA is primarily a question of fact. . . . The criteria provided by the regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be

---

[1]The parties disagree regarding the standard of proof, under the AWHA, for demonstrating that an exemption applies. Mr. Black contends citing *Fred Meyer*, 100 P.3d at 884, that under the AWHA, Secon must prove beyond a reasonable doubt that an exemption applies. (Resp. (Dkt. # 40) at 10.) Secon claims that the 2005 amendments to the AWHA, adopting the federal regulations, also adopted the standard of proof used in the federal system. (Reply (Dkt. # 41) at 8-9.) The court need not determine what standard applies under the AWHA as it would make the same findings regardless whether the standard of proof was preponderance of the evidence or beyond a reasonable doubt.

deprived of the protection of the Act." *Niggs v. United States Postal Serv.*, 501 F.3d 1071, 1079 (9th Cir. 2007) (internal citations and quotation marks omitted).

An employee is exempt if the employee's "primary duty" is the performance of exempt work. 29 C.F.R. § 541.700(a). Primary duty is defined as

> the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*

### 1. Executive Employee

29 C.F.R. § 541.100(a) defines an executive employee as a person who is compensated on a salary basis at a rate not less than $455 per week; whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision; who customarily and regularly directs the work of two or more employees; who has the authority to hire or fire other employees or whose suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. The regulations also define the word "management" as including but not limited to:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the

employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. The Ninth Circuit holds that "[w]e do not presume that the executive exemption fails merely because the proportion of time spent on exempt managerial tasks is less than fifty percent, where . . . managerial duties are packaged in employment with non-managerial tasks, and the management function cannot readily and economically be separated from nonexempt tasks." *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1114 (9th Cir. 2001).

Mr. Black's opposition is based largely on his argument that he did mostly manual labor. He claims, citing the regulations, that because he was a "blue collar worker" that:

The section 13(a)(1) exemptions and the regulations in this part do not apply to manual laborers or other "blue collar" workers who perform work involving repetitive operations with their hands, physical skill and energy. Such nonexempt "blue collar" employees gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists. Thus, for example, non-management production-line employees and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers and laborers are entitled to minimum wage and overtime premium pay under the Fair Labor Standards Act, and are not exempt under the regulations in this part no matter how highly paid they might be.

29 C.F.R. § 541.3(a). This argument is not persuasive. It is clear that Mr. Black believes at times that he was doing "blue collar" work; however, his deposition testimony reveals that although he performed what some may term "blue collar" work he was not a blue collar worker. In the *Baldwin* case, cited above, the plaintiffs were performing a significant amount of manual labor but the court affirmed the grant of summary judgment that the executive exemption applied where the plaintiffs' job, even considering the manual labor, fit within the executive exemption.

ORDER–10

Even though the court determines that Mr. Black was not a blue collar worker, the court finds that there is a genuine issue of material fact regarding whether Mr. Black qualifies as an exempt employee under the executive exemption. Specifically, after reviewing Mr. Black's deposition testimony, the court finds a genuine issue of material fact as to whether Mr. Black's "primary duty [wa]s management of the enterprise."

Secon contends that Mr. Black signed contracts and subcontracts; served as a primary point of contact for project owners; was responsible for addressing all issues with owners arising on contracts; submitted and negotiated change orders, reviewed and signed pay applications; staffed and supervised all hourly and exempt employees on job sites; scheduled and sequenced work; compiled and tracked daily job costs; addressed employee concerns and/or complaints; performed project margin analyses; ensured work was being performed safely; ordered necessary supplies, materials and equipment; obtained the necessary permits and prepared and submitted required traffic safety, quality control and environmental plans; estimated and bid new jobs; administered subcontracts; monitored subcontractor performance; handled issues related to subcontractor work; and ensured the terms of the project contract were being met by Secon. (Mot. at 2-4.) Secon also relies heavily on the statements of others to describe Mr. Black's job duties. It refers to the statement of another project manager claiming that it "is absurd to suggest Mr. Black was not given the authority and responsibility of other Project Managers at Secon." (Mot. at 14.) The other project manager described his duties as follows:

> A project manager is responsible for a project from start to finish. They're responsible for procurement of materials, for the submittal of the letters of certifications for those materials, all correspondence with the owners, for hiring the crew, for tracking the costs of the job, for making sure the job is on budget and is on the schedule.

> They're responsible for scheduling the work. They're responsible for seeing to it that the right equipment gets to the job, and if they're not using equipment, to get it off their job.

ORDER–11

They are responsible for completing a monthly margin analysis, to report to Secon, to the operations and general manager, how the job is doing in relation to how it was bid.

They report to the operation manager and to the general manager. And are also responsible for seeing to it that when the paving crew or other crews come and go off their jobs, that the work is prepped and ready for them to do their work. . . .

(Logsdon Dep. 55:14-56:8.)

A review of the documents and deposition testimony reveals that Mr. Black may have performed some but not all of the duties described above. For example, the court does not read Mr. Black's deposition testimony to include an admission that he administered subcontracts, monitored subcontractor performance and/or handled issues related to subcontractor work. Mr. Black was skillful in his deposition in making denials regarding day to day management activities. He continually stated that he did not have the ability to manage day to day operations and that he often had to consult with others before making decisions on certain matters. Looking at the definition of management provided in the regulations and the duties described by Mr. Black it is clear that Mr. Black did not interview or select employees; appraise employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; discipline employees; determine the type of materials, supplies, machinery, equipment or tools to be used; or plan the budget. Viewing the evidence in the light most favorable to Mr. Black and drawing all reasonable inferences in his favor, the court concludes that there are genuine issues of fact regarding whether Mr. Black was an exempt employee under the executive exemption.

**2.** **Administrative Employee**

29 C.F.R. § 541.200 defines an "administrative employee" as a person who is compensated on a salary or fee basis at a rate of not less than $455 per week, whose primary duty is the performance of office or non-manual work directly related to the

ORDER–12

management or general business operations of the employer or the employer's customers and whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. The phrase "directly related to the management or general business operations" means an employee who "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The regulation goes on to state that work directly related to management or general business operations includes such things as budgeting, auditing, quality control, purchasing, procurement, safety and health, personnel management, labor relations and legal and regulatory compliance. 29 C.F.R. § 541.201(b). The phrase "discretion and independent judgment"

> must be applied in light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). The regulations go on to explain that

> [t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term

> "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. § 541.202(c).

The court finds that there is no genuine issue of material fact that Mr. Black is an exempt employee under the administrative exemption. Mr. Black does not dispute that he satisfies the compensation aspect of the administrative exemption; rather, he claims that because he performed substantial physical labor that he does not qualify as an exempt employee. As discussed in detail above regarding the executive exemption, the fact that an employee performs substantial manual labor is irrelevant if their primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. Therefore, even assuming that Mr. Black completed substantial manual labor while working for Secon, if his primary duty involved office or non-manual work directly related to management or general business operations that included the exercise of discretion and independent judgment then Mr. Black would be an exempt employee. The first question then is whether Mr. Black's primary duty involved office or non-manual work related to Secon's management or general business operations.

The court finds no genuine issue of material fact that the duties Mr. Black performed constitute non-manual work directly related to Secon's management or general business operations. At his deposition, Mr. Black acknowledged that he did "whatever it took to get the jobs done; all aspects, anything and everything that needed to get the job done." Work directly related to management or general business operations includes such

ORDER–14

things as budgeting, auditing, quality control, purchasing, procurement, safety and health, personnel management, labor relations and legal and regulatory compliance. *See* 29 C.F.R. § 541.201. Mr. Black acknowledged that along with other employees his responsibilities included written and verbal communications with owners about specific projects; signing subcontracts on behalf of Secon; signing change orders; supervising and directing the work of employees at the job-site; determining the number of employees needed at a job-site and requesting employees as needed from individuals at Secon; determining the hours worked by the crew; scheduling the work; creating the project schedules (with the exception of paving) and sequencing the work; along with another employee preparing monthly cost analyses; signing pay estimates; drafting and ensuring compliance with owner required plans; along with another employee completing margin analyses on specific projects; inputting crew members' time cards; purchasing and scheduling materials; and ensuring that projects met specifications. These tasks encompass responsibility for, at the least, auditing, quality control, purchasing, procurement, safety and health, legal and regulatory compliance as well as personnel management. Additionally, Mr. Black was responsible for and succeeded in ensuring that the projects on which he worked came in at or under budget. Mr. Black performed non-manual work directly related to Secon's management or general business operations.

The next question is whether Mr. Black's primary duty included the exercise of discretion and independent judgment with respect to matters of significance. Looking at the considerations enumerated in the regulations, the answer to this question is also yes. Mr. Black certainly carried out major assignments in conducting the operations of the business, he was the person on the ground directing crews to complete, in some instances, multi-million-dollar contracts. It follows that he performed work that affected Secon's business operations to a substantial degree. Mr. Black also acknowledged that he was

able to bind the company on significant matters. Additionally, Mr. Black, at times provided consultation and/or expert advice in helping Secon to prepare bids. Further, Mr. Black also investigated and resolved matters of significance on behalf of management when he communicated with project owners on Secon's behalf. Mr. Black attempted during his deposition to make it appear that he was subject to oversight by his superiors at Secon. Taking the facts in the light most favorable to him, this does not demonstrate that he did not exercise discretion and independent judgment. The regulations provide as follows: "employees can exercise discretion and independent judgment even if their decision or recommendations are reviewed at a higher level. Thus the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.202(c). Mr. Black's primary duty involved the exercise of discretion and independent judgment.

The court finds no genuine issue of material fact regarding whether Mr. Black is an exempt administrative employee under both the FLSA and AWHA. He was compensated on a salary or fee basis at a rate of not less than $455 per week, his primary duty was the performance of office or non-manual work directly related to the management or general business operations of Secon and its customers and his primary duty included the exercise of discretion and independent judgment with respect to matters of significance.

### 3. Highly Compensated Employee

Secon also argues that Mr. Black is exempt as a highly compensated employee. Because the court finds no genuine issue of fact that Mr. Black is exempt as an administrative employee the court does not analyze whether Mr. Black is also exempt as a highly compensated employee.

ORDER–16

## C. Motions to Strike

Mr. Black moves to strike certain exhibits attached to the declaration of counsel for Secon. At oral argument he conceded that the documents were authentic and withdrew his motion.

Secon also filed a motion to strike two letters attached as Exhibit H to the declaration of Daniel Swedlow. The court denies the motion as to the letter from Mr. Bourne as it is addressed to the law firm representing Mr. Black but grants the motion as to the letter from Mr. Gradin as the declaration does not state who received that letter.

## III. CONCLUSION

For the foregoing reasons the court GRANTS the motion for summary judgment, DENIES Mr. Black's motion to strike as moot and DENIES in part and GRANTS in part Secon's motion to strike.

DATED this 20th day of October, 2008.

JAMES L. ROBART
United States District Judge

ORDER–17